## JOHN H. DILLON v. MARTIN HELLER.

TITLE, *Action to Quiet*—*Service by Publication*—*Jurisdiction.* In an action to quiet title to real estate, brought by a party in the actual possession of such real estate, against a person who is a non-resident and out of the state, service of summons may be made by publication, and such service will give the court ample jurisdiction to hear and determine the case.

*Error from Harper District Court.*

ACTION brought by *Martin Heller* against *John H. Dillon,* to quiet the title to lot number 10, block number 33, in the city of Anthony, in Harper county. Personal service of summons could not be obtained upon the defendant in Kansas; hence the plaintiff filed an affidavit for service of summons by publication, which (omitting court and title) reads as follows:

"Isaac A. Love, being first duly sworn, says: That he is attorney for the plaintiff herein; that service of summons herein cannot be made upon the defendant in this state; that the defendant is a non-resident of this state, and that the above action is in relation to real estate situated within the state, in which the defendant claims an interest, and that the relief demanded is to exclude the defendant from any interest therein. ISAAC A. LOVE.

"Subscribed and sworn to before me, this 25th day of August, 1886.

[Seal.] F. O. MOTT, *Clerk District Court.*"

The notice to the defendant was duly published for three consecutive weeks in the *Anthony Republican*, a weekly newspaper printed and published in the city of Anthony in said county, and having a general circulation in the county. Said notice (omitting court and title) reads as follows:

"NOTICE TO NON-RESIDENT.— The defendant, John H. Dillon, is hereby notified that he has been sued by the plaintiff in the above-entitled action in the above court, and that he must answer the petition of the plaintiff in said action filed, on or before the 11th day of October, 1886, or the same will be taken as true, and judgment will be rendered, quieting the title in the plaintiff to the following-described real estate, situated in Harper county, state of Kansas, to wit: Lot ten, in block thirty-three, in the city of Anthony.

"Witness my hand and the seal of said court, this — day of August, 1886.

[Seal.]                    F. O. MOTT, *Clerk District Court.*"

The defendant made a special appearance, and moved the court to quash the service by publication, for the following reasons, to wit:

"*First*, that the same does not run in the name of the state of Kansas; *second*, that the court cannot acquire jurisdiction of the person in these cases to quiet title by such service, to wit, service by publication."

On January 23, 1887, this motion was overruled, and the defendant making no further appearance in the case, the court rendered judgment as upon a default in favor of the plaintiff and against the defendant, quieting the plaintiff's title to the above-mentioned real estate, and for costs. The defendant brings the case to this court for review.

*R. B. Shepard*, for plaintiff in error.

*Isaac A. Love*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: The plaintiff in error, who was defendant below, claims that the court below erred in the following particulars and for the following reasons, to wit:

"1. That service of summons by publication in actions to

'quiet title' is not sufficient to give the court jurisdiction of the party defendant.

"2. That the court, not having jurisdiction of the party defendant, cannot pronounce judgment in the matter.

"3. That the service by publication is null and void and of no effect because it does not run in the name or style of 'The state of Kansas.'

"4. That the service by publication is null and void for the reason that it is not dated of the day and date issued.

"5. That the affidavit to secure service by publication is wholly insufficient to base a service by publication upon.

"6. That the judgment is void and null for the reason that it was obtained without any evidence whatever."

While the plaintiff in error does not in terms claim that a court cannot in any case where the defendant is a non-resident and out of the state, obtain jurisdiction to hear and determine the case by virtue of a service of summons only by publication, yet such is the result of his argument; and in support of such argument he cites a number of authorities, the principal of which is the case of *Hart v. Sansom*, 110 U. S. 151. We do not think, however, that the authorities cited go to the extent claimed for them. Of course a court cannot obtain jurisdiction of the person of a non-resident defendant by means only of a service of summons by publication, nor can a court obtain jurisdiction of the person of any person who is a non-resident and out of the state, by any kind of service, or by any kind of process or notice; for the jurisdiction of the courts of any sovereignty can never extend beyond the domain of the sovereignty which creates them. (*Amsbaugh v. Exchange Bank*, 33 Kas. 100, 105.) No court in Kansas can compel a non-resident defendant out of the state to come within its territorial boundaries, or to submit himself to its jurisdiction, or to do or perform any other act or thing; but this lack of power on the part of the court does not depend upon the character of the service of process made upon the defendant, but it arises from the well-established doctrine that the jurisdiction of one sovereignty (through its courts or otherwise) cannot extend into the territorial boundaries of another sovereignty. Therefore, for the purposes of this case, it will be admitted that the court

below did not have jurisdiction of the person of the defendant below, plaintiff in error. But that does not settle this controversy. The court below had jurisdiction of something. It had jurisdiction of the plaintiff below, and it had jurisdiction of the subject-matter of the action. This latter proposition, however, is questioned. Jurisdiction is of two kinds: jurisdiction of the person, and jurisdiction of the property or thing in controversy; or, in other words, jurisdiction *in personam*, and jurisdiction *in rem;* and jurisdiction in either case is sufficient to authorize a valid judgment to be rendered. Now it may be admitted, for the purposes of this case, and is admitted, that the old equitable action to quiet title to real estate was purely an action *in personam;* and indeed it will be admitted that originally every action in equity was purely an action *in personam,* but such is not the case under the statutes of this state, and such is not the case with respect to the present action. The present action is purely a *statutory* action brought by the plaintiff under § 594 of the civil code, and is one of a kind of actions which can be maintained only by a person who is in the *actual possession* of the property in controversy, either by himself or tenant. Where personal service of summons can be obtained in such an action, the action is one *in personam* as well as *in rem;* but where service of summons can be had only by publication, then the action is one only *in rem.* The present action is one only *in rem;* and the court below had ample jurisdiction to hear and determine the same. For the present, we shall assume that the statutes authorizing service of summons by publication were strictly complied with in the present case, and then the only question to be considered is whether the statutes themselves are valid; or, in other words, we think the question is this: Has the state any power through the legislature and the courts, or by any other means or instrumentalities, to dispose of or control property in the state belonging to non-resident owners out of the state, where such non-resident owners will not voluntarily surrender jurisdiction of their persons to the state, or to the courts of the state, and

Service by publication; jurisdiction.

where the most urgent public policy and justice require that the state and its courts should assume jurisdiction over such property. Power of this kind has always been exercised, not only in Kansas, but in all the other states. Lands of non-resident owners, as well as of resident owners, are taxed and sold for the taxes; and the owners may thereby be totally deprived of such lands, although no notice is ever given to such owners except a notice by publication or some other notice of no greater value, force, or efficacy. (*Beebe v. Doster,* 36 Kas. 666, 675–677.) Mortgage liens, mechanics' liens, material-men's liens, and other liens are foreclosed against non-resident defendants upon service by publication only. Lands of non-resident defendants are attached and sold to pay their debts; and indeed almost any kind of action may be instituted and maintained against non-residents to the extent of any interest in property which they may have in Kansas, and the jurisdiction to hear and determine in this kind of cases may be obtained wholly and entirely by publication. (*Gillespie v. Thomas,* 23 Kas. 138; *Walkenhorst v. Lewis,* 24 id. 420; *Rowe v. Palmer,* 29 id. 337; *Venable v. Dutch,* 37 id. 515, 519.) All the states, by proper statutes, authorize actions against non-residents, and service of summons therein by publication only, or service in some other form no better; and in the nature of things such must be done in every jurisdiction, in order that full and complete justice may be done where some of the parties are non-residents. We think a sovereign state has the power to do just such a thing. All things within the territorial boundaries of a sovereignty are within its jurisdiction; and generally, within its own boundaries, a sovereignty is supreme. Kansas is supreme except so far as its powers and authority are limited by the constitution and laws of the United States. And within the constitution and laws of the United States the courts of Kansas may have all the jurisdiction over all persons and things within the state, which the constitution and laws of Kansas may give to them, and the mode of obtaining this jurisdiction may be prescribed wholly, entirely and exclusively by the statutes of Kansas. To obtain jurisdiction of any-

thing within the state of Kansas, the statutes of Kansas may make service by publication as good as any other kind of service. In the present case the plaintiff resides within the state of Kansas, and he virtually surrendered jurisdiction of himself to the court below when he commenced this action. He is in the actual possession of the property in controversy, and, being in the actual possession thereof, he also in effect surrendered jurisdiction thereof to the court when he brought this action, and as much jurisdiction thereof as any court in any action could obtain by virtue of a seizure of the property by its own officers; and service of summons by publication, as authorized by law, was afterward had in this case; and this gave the court the power to hear and determine the case, and to render a judgment therein, and to enforce such judgment; and this is all that is necessary to give complete and absolute jurisdiction over the thing in controversy. Jurisdiction is simply the power to hear and determine and to enforce the judgment, order or decree made or rendered on such hearing. Nothing can be lacking in the present case. The court had the power to hear and determine the case, the power to render the judgment prayed for, which was to quiet the plaintiff's title and possession; and he was in the actual possession of the property; and as the property was and is within the territorial jurisdiction of the court, there would seem to be no good reason why the judgment is not valid, and why the court cannot enforce such judgment. It is said in the case of *Hart v. Sansom*, 110 U. S. 155, that "the courts of the state may perhaps feel bound to give effect to the service made as directed by its statutes;" and also: "It would doubtless be within the power of the state in which the land lies to provide by statute that if the defendant is not found within the jurisdiction, or refuses to make or to cancel a deed, this should be done in his behalf by a trustee appointed by the court for that purpose." Now certainly no court would feel bound to give effect to a statute unless the court believed the statute to be valid and an existing law, and if the state may rightfully provide by statute that any one of its courts may authorize a trustee to

make or cancel a deed executed by or for a non-resident, or in which a non-resident is interested, then the state could unquestionably authorize the same court by its judgment alone, to cancel or in effect to create the deed, for the trustee appointed by the court is the mere creature of the court and can take no power nor exercise any power except such as emanates from the court itself. There can certainly be no necessity for the circuitous, indirect and cumbrous mode of appointing a trustee to do a thing, when the judgment of the court may itself answer the entire purpose. (See Civil Code, § 400.) If jurisdiction cannot be given to the court to render such a judgment, then, *a fortiori,* jurisdiction could not be given to the court to appoint a trustee for such a purpose. A court without jurisdiction cannot do anything—not even to appoint a trustee. We think the court below had ample jurisdiction in the present case. We think a court may in any case, where the statutes authorize the same, obtain jurisdiction upon service by publication concerning anything present and existing within the boundaries of the state. To hold otherwise would unsettle and overturn a great many titles to land in this state—titles which have long been acquiesced in and supposed to be good and valid, and to be settled and established by the statutes and by numerous judicial decisions. And to hold otherwise would also do great injustice to innocent purchasers of lands who hold the same under such titles. We think such titles are good.

We think it is unnecessary to consider in detail any of the other points presented by counsel for plaintiff in error. They are all untenable, and with one exception they were not presented to the court below. The only questions presented to the court below are as follows: "*First,* that the same [the service of summons by publication] does not run in the name of 'The state of Kansas;' *second,* that the court cannot acquire jurisdiction of the person in these cases to quiet title by such service, to wit, service by publication." We think the statutes authorizing service of summons by publication in cases like the present are valid; that such statutes were sufficiently com-

plied with in the present case; and that the service of summons by publication made in the present case is sufficient.

The judgment of the court below will be affirmed.

All the Justices concurring.