BELLZORA PRICE, APPELLANT, v. DANIEL E. PRICE, APPELLEE.

FILED JANUARY 18, 1906. No. 14,099.

1. **Husband and Wife.** It is the right and privilege of a husband to fix in good faith a domicile for himself and wife, and, when he does so, it is the duty of the wife to follow her husband to such domicile and live with him there as his wife.

2. ————: MAINTENANCE. It is the duty of the husband to provide for the reasonable support and maintenance of his wife during the continuance of the marriage relation; and, when the husband without just cause fails to provide for the support and maintenance of the wife, she may maintain an action against him for reasonable maintenance, unless by her own act of abandonment of the husband's domicile, or some other act wholly inconsistent with her duty as his wife, she has forfeited her right to such maintenance.

3. **Abandonment: EVIDENCE.** To defeat a wife's claim for support and maintenance on the ground of voluntary abandonment of the husband's domicile, the fact of such abandonment must be established by cogent proof.

4. **Evidence** examined, and *held* not sufficient to establish a voluntary abandonment of the husband by the wife.

APPEAL from the district court for Hamilton county: BENJAMIN F. GOOD, JUDGE. *Reversed with directions.*

*O. A. Abbott,* for appellant.

*Stark & Grosvenor, contra.*

OLDHAM, C.

This was an action for support and maintenance instituted by the plaintiff wife against the defendant husband. The petition alleges the marriage between plaintiff and

defendant in the city of Grand Island, Nebraska, April 12, 1900; that after the marriage plaintiff and defendant lived together as husband and wife in the village of Phillips, Hamilton county, Nebraska, until the latter part of August, 1900, when, by mutual agreement, plaintiff removed to the city of Grand Island with her children by a former marriage; that after plaintiff's removal to Grand Island defendant continued to visit and cohabit with her as her husband until the month of June, 1901, when defendant abandoned the plaintiff, and refused and neglected to further provide for her support and maintenance. The petition prayed for a reasonable allowance from defendant's income for plaintiff's support. The answer admitted the marriage, and denied each and every other allegation contained in the plaintiff's petition, and by way of cross-bill asked for a divorce from the plaintiff on the grounds of wilful abandonment without just cause for more than two years. On issues thus joined, there was a trial to the court and a judgment dismissing both the petition of the plaintiff and the defendant's cross-bill, and taxing each of the parties with their own costs. To reverse this judgment plaintiff has appealed to this court.

There is very little conflicting testimony in the record, the contest mainly depending upon the presumptions arising from undisputed or clearly established facts, which may be briefly summarized as follows: At the time of the marriage, plaintiff was a widow and the mother of four children by her former marriage, the oldest one being a son about 18 years of age, and the younger ones being daughters, ranging in age from 9 to 16 years. Defendant was a middle-aged man, a widower, who was the father of 3 children, all girls, ranging in age from 7 to 13 years. Each of the parties were of high moral and social standing. The defendant husband resided in the village of Phillips, about 9 miles distant from the city of Grand Island, where the plaintiff wife resided at and before the marriage. After the marriage plaintiff and her 3 younger children resided with defendant and his children in the

village of Phillips until the latter part of August, 1900. Plaintiff, at the time of the marriage, was the owner of a home in Grand Island of the value of about $800, and also had $1,000 loaned at interest, which she had received from her first husband. It fairly appears from the record that, by mutual agreement between the husband and wife, the wife returned with her children to her home in Grand Island for the purpose of sending them to school there during the years 1900 and 1901. While there is some suggestion in the record that this arrangement was without the approval of the husband, yet his conduct toward plaintiff after her removal to Grand Island shows that he acquiesced in her conduct, for he testifies that he visited her from time to time at her home in Grand Island, and cohabited with her at the time of such visits, and contributed small sums of money for her support during the school year of 1900 and 1901. It is fairly suggested by the evidence that there existed some dissatisfaction between plaintiff and defendant during their residence in Phillips, on account of the interference of relatives of the two families of children in the management and government of the children. *

When the school year had ended, defendant wrote to plaintiff, stating his inability to maintain the two families in the two places, and inquired her intention as to returning to live with him at Phillips. While the oral testimony shows that plaintiff had objected to going back to Phillips to live with defendant, yet she answered his letter, saying that she would return to live with defendant at Phillips when he provided a home there for her. Defendant owned no real estate and very little personal property at that time, and relied on renting property to provide a home. He answered her letter, telling plaintiff, in substance, to inform him when she intended to come to Phillips, that he might prepare for her, and suggested that she should help furnish the home and contribute to the support of her own children, if she should bring them with her. Here follows the only material conflict in the

testimony.   Plaintiff claims that she answered this letter by a note, asking him to come to see her to arrange for her return to Phillips, and that in response to this note defendant came to Grand Island and suggested to her that they could just as well continue to live apart, as they were, for the next three or four years, but that, if in the meantime she wanted to come to Phillips to live, he might rent a house there.   Defendant denies receiving this note, and denies the visit and conversation testified to by the wife.   After this defendant ceased corresponding with his wife, and has never provided anything for her support and maintenance.   In the following December defendant went to the city of Washington as a temporary secretary of Congressman Stark, and remained there in that capacity until the following April.   During this time plaintiff wrote several communications to defendant, offering to go and live with him at Washington, and later, when he had returned, she offered to live with him at Aurora, Nebraska; but defendant made no response to any of these communications, and never again went to visit his wife.

We think there are certain elementary principles that should govern the judgment and finding in this case.   The first is that it is the right and privilege of the husband to fix in good faith a domicile for himself and his wife. Second, it is the duty of the wife to follow her husband to such domicile as he may provide in good faith, and there to live and cohabit with him as his wife.   It is also the primary duty of the husband to provide for the reasonable support and maintenance of his wife according to his rank, standing, and financial ability, when she accompanies him to the domicile which he has selected.   The right of the wife to such reasonable support and maintenance can be defeated only when she wilfully and without just cause, either abandons the domicile of the husband, or commits some overt act inconsistent with her duty as a wife.   The law presumes that a man does not intend to abandon his family, in the absence of cogent

proof to the contrary (*Jennison v. Hapgood,* 10 Pick. (Mass.), 77, 99), and the same rule applies with reference to the wife.

Now, the only way that plaintiff could be defeated in her claim for reasonable support and maintenance would be by a finding of fact that she had voluntarily and intentionally, and without good cause, abandoned the domicile of her husband, which he had provided for her. From the evidence in this case, we are unable to find this fact. Plaintiff went to Grand Island with the consent and acquiescence of her husband. In every communication from her to the husband she has expressed a willingness to live with him whenever and wherever he might provide a home, although it does appear in the testimony that she had expressed a desire that the home should be at some other place than the village of Phillips. While defendant suggested in his communication to his wife an intention to procure a home for her, yet the evidence fails to show that he ever did so. We are therefore impressed with the conclusion that plaintiff has never done anything to defeat her right to a claim on the defendant for reasonable support and maintenance according to his earning capacity and financial holdings. The evidence shows that defendant's earning capacity is about $50 a month, and that he has three minor children dependent on him for support. The evidence shows that he is the owner of property of the value of about $500, to which nothing has been contributed from the joint earnings of plaintiff and defendant, or from her separate estate. We think under this showing that only a reasonable contribution from defendant's income be awarded the plaintiff for her support. It seems to us that $100 a year, paid in quarterly instalments, after judgment has been rendered on this mandate, would be just and equitable in view of the condition of each of the parties, and that these contributions should continue until the defendant provides a suitable home for plaintiff.

We therefore recommend that the judgment of the dis-

trict court be reversed and the cause be remanded, with directions to the court below to enter a judgment for the plaintiff for the sum of $100 a year for her support and maintenance from June 18, 1901, to the date of the entry of this judgment in the district court, and that a further decree be entered awarding plaintiff support and maintenance at the rate of $100 a year, to be paid in quarterly instalments until defendant has provided a home for plaintiff in which she may live with him as his wife.

AMES and LETTON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, it is ordered that the judgment of the district court be reversed and the cause remanded, with directions to the court below to enter a judgment for the plaintiff for the sum of $100 for her support and maintenance from June 18, 1901, to the date of the entry of this judgment in the district court, and that a further decree be entered awarding plaintiff support and maintenance at the rate of $100 a year, to be paid in quarterly instalments until defendant has provided a home for plaintiff in which* she may live with him as his wife.

JUDGMENT ACCORDINGLY.