Common Pleas Court of Hamilton County.

## GROSS V. WICKFELDT ET AL.

Decided March 11, 1931.

*Joseph T. Harrison,* for plaintiff.
*Spangenberg & Spangenberg,* and *Albert C. Keeler,* for defendant.

MATTHEWS, J.

The plaintiff in this action secured a divorce from the defendant herein, Henry Otto Wickfeldt, at the October term in the year 1905, in cause No. 131237 upon the docket of this court, and in the decree she was awarded alimony in the sum of Five Hundred ($500) Dollars, and the defendant was ordered to immediately pay it, which, however, he has not done. Recently his father died, leaving a last will in which he was named legatee, and on December 2, 1930, an order of distribution was made in the Probate Court in the administration case.

This action is a creditor's bill in which the plaintiff has joined her former husband and the executor of his father's

estate, and seeks to have the legacy of Henry Otto Wickfeldt under said will subjected to the payment of the judgment or decree for alimony.

The defendant Henry Otto Wickfeldt has filed an answer admitting that he is one of the devisees and legatees under the will of his father, probated in this county on September 9, 1929, and that said estate has been fully administered and that on December 2, 1930, an order of distribution was made, under which there will be a certain sum distributed to him. He also admits that at the October term 1905, the Court of Common Pleas of this county entered a decree of divorce in favor of the plaintiff in cause No. 131237, and that said decree included an award of $500 as alimony.

By way of defense he alleges that when said divorce and alimony action was commenced and at all times during its pendency his domicile and residence was in the state of Missouri and had been for a long time before that and so continued to be for a long period thereafter, during which time he was not within the state of Ohio, and that he at no time had any property, real or personal, within the state of Ohio, and that no summons was served on him, nor other notice given him of the commencement or pendency of the suit, except by constructive service, and further, that he did not discover or learn of the judgment rendered in said case until the commencement of this action, and as a conclusion he alleges that said Court of Common Pleas of Hamilton county was without jurisdiction of his person and that the money judgment in said decree is void.

The plaintiff by way of amended reply admits that in said cause No. 131237 service was had upon Henry Otto Wickfeldt by publication, for the reason that his whereabouts were unknown to the plaintiff, and denies every other allegation contained in the answer .

The cause comes before the court upon the defendant's demurrer to the amended reply and his motion for judgment on the pleadings.

This summary of the pleadings is sufficient to disclose that this is not a case of a wife divorced in a foreign

jurisdiction on service by publication suing her former husband for alimony. It does not therefore fall within the category in which is found *Cox* v. *Cox,* 19 Ohio St., 502, 20 Ohio St., 439, and similar cases. It is an action based on the assumption that a valid decree binding the defendant to pay $500 was rendered by this court in 1905 in the divorce and alimony action, and that so far as the obligation to pay is concerned, is *res adjudicata.* It is a creditor's bill by a judgment creditor to subject assets that cannot be reached by execution.

If the plaintiff can maintain this action she could enforce the judgment upon which it is based by execution or other proceedings in the original action.

The leading case on this subject, and the one always cited, is that of *Pennoyer* v. *Neff,* 95 U. S., 714, in which the court held, as stated in the second paragraph of the syllabus, that:

"A personal judgment is without any validity, if it be rendered by a state court in an action upon a money-demand against a non-resident of the state, who was served by a publication of summons, but upon whom no personal service of process within the state was made, and who did not appear; and no title to property passes by a sale under an execution issued upon such a judgment."

Counsel for plaintiff, however, earnestly contends that there is a distinction between the enforcement of a judgment in a sister state and its enforcement in the courts of the same state in which it was rendered. The court fails to see any ground for such a distinction.

The Full Faith and Credit provision of the Constitution is not involved in this inquiry. It is the Due Process provision that is violated, and when that provision is involved, there is no distinction between enforcement in another court of the same state and a court of a sister state, nor is there any distinction when the enforcement is attempted in the same court and case in which the judgment was rendered. The constitutional requirement is stated in 6 Ruling Case Law, pp. 448 and 449, under the heading of "Due Process of Law," as follows:

· "Whenever a judgment purely *in personam* is sought, personal service upon the defendant is indispensable; in the absence of consent to substituted service, and in the absence of property of the defendant in the state, which is the subject or object of the action, nothing short of service of a summons upon the defendant personally within the state or his appearance in the action constitutes that due process of law which will give the necessary jurisdiction to a court of the state to render a personal judgment against a non-resident."

And on page 450 it is said:

"Service by publication, or in any other authorized form, is sufficient to answer the requirement of due process of law where property is once brought under the control of the court by seizure or some equivalent act. The law assumes that property is always in the possession of its owner, in person or by agent, and proceeds upon the theory that its seizure will inform him that it is taken into the custody of the court and that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale."

In the annotation to the case of *Stallings* v. *Stallings*, 9 Lawyer's Reports Annotated (N. S.), 593, the author summarizes the result of the application of this constitutional provision to alimony cases as follows:

"A personal decree or judgment for alimony, rendered in a proceeding for divorce, in favor of the wife against her non-resident husband, not served with process within the state but brought before the court only constructively by publication of notice to appear, or by a personal service of such notice in another state, in the absence of a voluntary appearance, is void, not only in the state where rendered, but in every other jurisdiction as well."

Cases from fifteen states are cited in support of the annotation and no cases to the contrary.

In the more recent case of *Closson* v. *Closson*, 29 L. R. A., 1371, the Supreme Court of Wyoming held that:

"A valid personal judgment for money cannot be rendered against a non-resident who has not been served with process within the state, and has not appeared in the action."

In the annotation at 1381, the annotator has this to say on this subject:

"It should be observed, as indicated in the above title, that the present annotation is concerned only with cases involving the right to dispose of property within the jurisdiction of the court rendering the decree for alimony or maintenance, and that it does not include that large number of cases dealing with the general question of the validity of a decree *in personam* for alimony, rendered on constructive or substituted service only, and not involving property rights. *The invalidity of such a decree in personam may be assumed for purposes of the annotation.*"

It seems to the court that the language of the Supreme Court of the United States in *Freeman* v. *Alderson,* 119 U. S., 185, at 188, is sufficient to dispose of all contentions in this case:

"The state has jurisdiction over property within its limits owned by non-residents, and may, therefore, subject it to the payment of demands against them of its own citizens. It is only in virtue of its jurisdiction over the property, as we said on a former occasion, that its tribunals can inquire into the non-resident's obligations to its own citizens; and the inquiry can then proceed only so far as may be necessary for the disposition of the property. If the non-resident possesses no property in the state, there is nothing upon which its tribunals can act. *Pennoyer* v. *Neff,* 95 U. S., 714, 723. They cannot determine the validity of any demand beyond that which is satisfied by the property. For any further adjudication, the defendant must be personally served with citation or voluntarily appear in the action. The laws of the state have no operation outside of its territory, except so far as may be allowed by comity; its tribunals cannot send their citation beyond its limits and require parties there domiciled to respond to proceedings against them; and publication of citation within the state cannot create any greater obligation upon them to appear. Ib., page 727. So, necessarily, such tribunals can have no jurisdiction to pass upon the obligations of non-residents, except to the extent and for the purpose mentioned."

Counsel for the plaintiff earnestly contends that the *ratio decidendi* of the case of *Reed* v. *Reed,* 121 Ohio St., 188, supports his contention. In that case the plaintiff in her petition sought divorce and alimony and specifically

described real estate located in Cuyahoga county and Lake county, Ohio, and asked to be awarded alimony. The action was filed in the Common Pleas Court of Cuyahoga county, and service was had by publication only. The Supreme Court held that the trial court had power to award alimony out of the property, both in the county in which the action was pending and also in other counties within the state of Ohio. Counsel urges that the fact that the court upheld the jurisdiction of the court over property situated in another county, that that shows the trend in Ohio is toward liberalizing and enlarging the jurisdiction of the court in alimony cases even to the extent of sustaining the jurisdiction upon constructive service where no specific property is brought under the control of the court and the decree in terms assumes only to award a sum of money, with a direction to defendant to pay.

In the opinion of this court, the reasoning of the Supreme Court does not justify any such conclusion. The scope of the decision is expressed in the second and third paragraphs of the syllabus:

"Such an action is substantially one *in rem,* and when the petition specifically describes the real property in question, the court has jurisdiction upon completion of service by publication and hearing upon the merits, to decree the relief sought."

"Under Section 11990, General Code, the decree entered in one county may be made a lien upon real property of the defendant lying within another county in the state."

At page 200 the court said:

"We think that the Code contemplates that the alimony obligation may be an obligation *in rem,* and that when a plaintiff prays for alimony to be decreed out of or made a charge upon specific real property within the jurisdiction, the case cannot be looked upon as calling for a mere money judgment."

The court also pointed out that a judgment or decree in one county can be enforced by execution, order of sale or other process issued to the sheriff of any county in the state (Section 2837, General Code), and reached the conclusion that the real estate situated in Lake county

was within the territorial jurisdiction of the court, and that therefore the court had jurisdiction which was properly invoked by a description of the property in the petition, and that it was not necessary to that jurisdiction that there be any preliminary seizure of the property by attachment, injunction or receivership.

*Reed* v. *Reed, supra,* is reported in 64 A. L. R., 1384, to which is appended an elaborate annotation. The annotator certainly did not consider that that case authorized judgment *in personam* upon service by publication in an alimony case.

There is a conflict in the authorities as to whether seizure of property is a condition precedent to jurisdiction in an alimony case, or whether a description of the property in the petition and the prayer that it be subjected is sufficient to jurisdiction. *Reed* v. *Reed, supra,* holds that jurisdiction is acquired by describing the property in the pleading without a preliminary seizure of it. At 1394 the annotator says on that subject that:

"And in the reported case (*Reed* v. *Reed, ante,* 1384) where the petition asked to have land specifically described therein appropriated as alimony, the court held that such description brought the land within the jurisdiction of the court, it not being necessary, in order to bring the property under the control of the court, that it should be actually taken in attachment or by other writ."

While the court recognizes the law as a developing and enlarging system, it does not discover any trend or tendency to dispense with personal notice as a condition precedent to jurisdiction to render personal judgment.

To hold that a court under the Due Process provision of the Constitution could render a personal judgment for money upon service by publication would necessitate the disregarding of an unbroken line of decisions. The court in *Reed* v. *Reed* did not disclose any intention to do that. It seems to the court that had nothing been previously decided and no constitutional guaranty existed—were the question entirely *res integra*—original reasoning would require the promulgation of the identical rule.

The motion for judgment on the pleadings is therefore sustained.